SEARCY, Appellant, v. CLAY COUNTY et al.

Division Two, June 30, 1903.

1. **Pleadings:** DEMURRERS: LEGAL EFFECT OF. A demurrer admits all facts in the petition well pleaded, but in determining the legal effect of the demurrer the whole petition should be looked to. A demurrer does not admit a fact which the petition contradicts.

2. ———: ———: ———: CASE STATED. Where plaintiff pleads a judgment of a court of competent jurisdiction in a matter of which it had jurisdiction and to which he was a party, a demurrer to that petition will not admit the truth of his charge that the facts which that court judicially found and determined, did not exist. Those allegations are irreconcilable.

3. ———: ———: RES ADJUDICATA: PUBLIC ROAD: ERROR IN SURVEY: FRAUD. A petition which alleges that a proper petition was filed in the county court for the widening of a public road, that due notice was given, that the petition was heard, that the surveyor was ordered to view and mark out the road and report, that the surveyor did locate the road and reported that he had obeyed the order of the court, that the plaintiff stood by and made no objection to the survey and location, and that the court found that the surveyor had properly obeyed its order and directed that the road be established, states a judgment that is final as to all parties to that proceeding, and in the absence of a charge of fraud practiced upon the court in procuring that judgment to be entered as it was, a petition, invoking the equity powers of the circuit court to enjoin the opening of the road in accordance with that judgment, which charges these things, does not state a cause of action by going further and charging that the surveyor had, in marking out the road, departed from the description contained in the application therefor, which error he had so concealed in his report that the court was misled unknowingly into establishing a road, not in accordance with that application, but in conformity to the surveyor's report. And a demurrer to the petition does not admit this latter charge to be true so as to overcome all the other allegations, for if these alle-

gations are true, they completely estop plaintiff from saying the surveyor's location was not as he reported it.

4. **Public Road:** JUDGMENT OF COUNTY COURT: ERROR OF SURVEYOR: NO APPEAL. The judgment of a county court in establishing a public road, if all the necessary antecedent steps have been taken to give it jurisdiction, is just as binding and conclusive as is the judgment of a court of general jurisdiction in a proper case. A plaintiff who seeks to enjoin the enforcement of that judgment, if he was duly notified of the filing of the application for the road, was bound to take notice of the various steps leading up to the appropriation of his land for .that road, and if he believed there was error in the location of the road by the surveyor or a deviation from the true line called for by the application, it was his duty to call the attention of the county court to the error by timely action, and if he did so and it overruled his contention, his remedy was by appeal. And if he does none of these things he can not afterwards overthrow the judgment of the county court establishing the road by an injunction suit in an equity court.

5. ———: SUIT TO ENJOIN OPENING: PARTIES DEFENDANT. The county is not a proper party defendant to a suit to enjoin the opening of a road established by the judgment of the county court. The county has no control over the court and is not a party to the proceeding to establish the road.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus*, Judge.

AFFIRMED.

*D. C. Allen* for appellant.

(1) The demurrers of the defendants to the amended petition admit to be true all facts therein which are well and properly pleaded. Hence, they admit the several errors and deviations charged in the amended petition. Shields v. Johnson Co., 144 Mo. 80; Butler v. Lawson, 72 Mo. 248; Goodson v. Goodson, 140 Mo. 215; Verdin v. St. Louis, 131 Mo. 74; Dodson v. Lomax, 113 Mo. 559. (2) It is charged in the amended petition that the errors committed by the county surveyor in his reports, the freeholders in their assessments of damages and reports, and the county court in its orders and judgments, made after January 3, 1899,

are concealed beneath an apparent conformity with the original petitions for the public roads. The demurrers admit this to be true. The question then is, are the judgments of the county court void or voidable? They are not void on their faces, but require evidence *dehors* the record to establish the fact that they are so. They are, therefore, voidable judgments. Elliott's Roads and Streets (2 Ed.), sec. 290; Black on Judgments, sec. 170. (3) The proceedings of the county court being erroneous, and its judgment in the matters of the public roads voidable, they can not be impeached by collateral attack; but may be, as in this case, by a direct attack through the equitable powers of the circuit court. This is the universal doctrine of the text books and reports. Our Supreme Court has repeatedly so held. Carpenter v. Gresham, 59 Mo. 247; New Madrid Co. v. Phillips, 135 Mo. 65; Mitchell v. Railroad, 138 Mo. 331; Baubie v. Ossman, 142 Mo. 505; Black on Judgments, sec. 246; Elliott on Roads and Streets (2 Ed.), sec. 290. (4) All roads must be surveyed, marked, located, damages assessed and established on the line described in the application and order for the road, else they are void. Elliott on Roads and Streets (2 Ed.), sec. 382; Butler v. Barr, 18 Mo. 360; County of Cooper v. Geyer, 19 Mo. 257. (5) Proceedings to open a public road must be taken in their entirety, and if they are void as to one of the parties (in this case Charles G. Searcy), they are void as to all; and this is specially true where the proceedings are void as to one whose land lies between the terminal points of the proposed road. Here, the lands of appellant's are between the terminal points. Anderson v. Pemberton, 89 Mo. 61; Railroad v. Young, 96 Mo. 42; In re Essex Avenue, 121 Mo. 105; Orrick School District v. Dorton, 125 Mo. 444. (6) Clay county is a necessary party defendant. The county is a quasi-public corporation and has in charge the execution of certain functions of the State within its borders. It can sue and be sued. Opinion of Supreme

Court, 55 Mo. 295; Jefferson Co. v. St. Louis Co., 113 Mo. 619; Montgomery Co. v. Auchley, 103 Mo. 492; sec. 543, R. S. 1899; Story's Equity Pleading (6 Ed.), sec. 72.

*Simrall & Trimble* for respondents.

(1) The county court had power to widen the road. R. S. 1899, sec. 9410; Wooldridge v. Rentsler, 62 Mo. App. 595.    (2) The orders of the county court, made in the proceedings to widen the road, are judgments which are just as binding and conclusive on the parties thereto as are the judgments of any court of general jurisdiction.    Mitchell v. Railroad, 138 Mo. 331; Black on Judgments, sec. 250.    (3) Appellant was a party to, and bound by, these judgments rendered by the county court in the road proceedings.    The notices required by the statute were duly given and brought him into court.    R. S. 1899, sec. 9415.    (4) Appellant had the right to appeal to the circuit court where the cause would be tried anew.    R. S. 1899, sec. 9419; State ex rel. v. Nodaway County, 80 Mo. 501; Bennett v. Woody, 137 Mo. 377; Forsyth Boulevard v. St. Louis County, 127 Mo. 417; Jefferson County v. Cowan, 54 Mo. 237.    (5) Being a party to the proceedings, he must take notice of every step taken therein.    The report of the county surveyor, the order to the commissioners, and their report assessing damages, all showed, by exact and definite description, just how much and what portion of appellant's land was being taken and the latter showed the amount of damages assessed.    Therefore, appellant can not claim that he was misled, deceived, or that a mistake was made from which a court of equity should relieve him.    He could have appealed either from the order approving the report assessing damages or from the order widening the road.    R. S. 1899, sec. 9419; Bennett v. Woody, 137 Mo. 380.    (6) Appellant's proper remedy was by appeal from the

judgment of the county court. Railroad v. Maddox, 92 Mo. 471; State ex rel. v. Nodaway County, 80 Mo. 503; Moore v. Bailey, 8 Mo. App. 159; Payne v. O'Shea, 84 Mo. 135; Black on Judgments, sec. 358. An appeal is a direct attack. Elliott on Roads and Streets (2 Ed.), sec. 365. (7) Where a party has had an opportunity to be heard in court and does not avail himself of it, equity will not interfere in his behalf. Payne v. O'Shea, 84 Mo. 136; High on Injunctions (3 Ed.), sec. 579; Moody v. Peyton, 135 Mo. 492; Hamilton v. McLean, 139 Mo. 687; State ex rel. v. Nodaway Co., 80 Mo. 503. (8) To authorize a court of equity to set aside a judgment on the ground of mistake it must appear that such mistake was not caused by, nor mingled with negligence of appellant. Brown v. Fagan, 71 Mo. 568; Hamilton v. McLean, 139 Mo. 686; Shelbina Hotel Assn. v. Parker, 58 Mo. 329; Smith v. Taylor, 78 Mo. App. 633; Murphy v. DeFrance, 101 Mo. 158; Black on Judgments, secs. 375, 378, and 380; 2 Pomeroy's Equity Jur., sec. 856; 20 Am. and Eng. Ency. of Law (2 Ed.), p. 831. (9) Even where the mistake is honest and genuine and such as a man might reasonably make, it will not be an excuse for the interference of a court of equity unless the judgment is against conscience, greatly injurious or will occasion great loss. Black on Judgments, sec. 381; Bailey v. Culver, 84 Mo. 539. (10) Equity is slow to interfere with the operation of judgments. Something more than an erroneous judgment should be shown. Black on Judgments, secs. 365 and 356.

GANTT, P. J.—This is a suit in equity, commenced in the circuit court of Clay county.

The amended petition to which a demurrer was sustained, omitting caption, is in the words following:

"And now comes Charles G. Searcy, the plaintiff in the above-entitled cause, by his attorney, and in this,

Vol 176 mo—32

his first amended petition herein, states the facts follow-
ing constituting his cause of action against the defend-
ants in said cause, to-wit:

"That before and during all the times mentioned
herein, he was, and ever since has been, and now is, the
owner in fee and in possession of the following de-
scribed lands, situate in Clay county, Missouri, to-wit:
the west half of the northwest quarter of section 15 in
township 52 of range 31; the east half of the northeast
quarter of section 16 in said township and range, ex-
cept the part thereof, embracing five acres, cut off by
the right of way of the Hannibal and St. Joseph Rail-
road Company and occupied by said railroad company
as right of way; and ten acres off the north end of
the west half of the southwest quarter of section 16
in said township and range: the whole of said lands, so
owned and possessed by plaintiff, comprising 165 acres: ·

"That said defendants, Abram W. Gross, George
W. Sexton and John C. Cooper, were, at the time of the
institution of this suit and the service of summons here-
in on them, and ever since have been, and now are,
justices of the county court of Clay county, Missouri,
duly commissioned, qualified and acting as such.   That
said defendant, Daniel J. Mathews, was at the time of
the institution of this suit and the service of summons
herein upon him, road overseer of Road District No. 9
in township 31 in Clay county, Missouri, duly appointed,
qualified, and acting as such.   That said defendant,
Joseph Carroll, was at the time of the institution of
this suit and the service of summons herein upon him,
road overseer of Road District No. 8 in township 52 of
range 31 in Clay county, Missouri, duly appointed,
qualified, and acting as such.      ·

"That on the 7th day of November, 1898, J. R.
Agnew and more than eleven other freeholders of
Liberty and Kearney townships in said Clay county,
filed their application in the county court of Clay
county, after notice thereof given in accordance with

law, for the establishment of new public road and for the widening of an old public road—the two to aggregate forty feet in width—laid off to the extent of twenty feet in width on each side of the center line of such proposed new public road and widening of an old public road, between the termini and along the line thus described, to-wit:  Beginning at a point on the east line of section 10 in township 52 of range 31, in Clay county, Missouri, which point is twenty and eighty-hundredths chains north of the southeast corner of said section 10, and running thence west twenty and twenty-eight-hundredths chains to a point; thence south twenty and sixty-hundredths chains to the southwest corner of the southeast quarter of the southeast quarter of said section 10; thence west to a point two and forty-one-hundredths chains east of the quarter section corner on the south side of said section 10; thence south one and eighty-two-hundredths chains, thence west two and sixty-one-hundredths chains, thence north one and eighty-two-hundredths chains to a point thirteen feet west of said quarter section corner; thence west to the southwest corner of said section 10; thence west to the southwest corner of section 9 in said township and range; thence south to the quarter section corner on the west side of section 16 in said township and range; thence west to the northeast corner of the west half of the southeast quarter of section 17 in said township and range; thence south to the southeast corner of said half quarter section last aforesaid; thence west to the southeast corner of the west half of the southwest quarter of said section 17, in said township and range, the southern terminus of such proposed road.

"That the part of such proposed road to be—in said application—established as a new road is described as follows:  Beginning at a point twenty and twenty-eight-hundredths west of the beginning point above described, thence running south twenty and sixty-hundredths chains to the southwest corner of the southeast

quarter of the southeast quarter of said section 10. That the remainder of said proposed road—by said ap-plication—was to be widened to twenty feet on each side of the center line above described.

"That said old public road had been located and established (on said 7th day of November, 1898), for a period of near forty-three years, in its location and establishment, a strip twenty feet in width for the purpose of such old public road had been taken off the north end of the said lands now owned and possessed by plaintiff, and such strip twenty feet in width had ever after the location and establishment of such old public road been in the ownership and use of the public.

"That on said 7th day of November, 1898, after filing of said application and proof of the publication of notice of its presentment, for further consideration, the same was continued to its January adjournment in the year 1899, by said county court, to-wit, to January 3, 1899; and thereupon on said day said county court by its order of record, made and entered on said day, required Charles L. Leitch, county surveyor and ex-officio road commissioner of said Clay county, to view, survey and mark out the road so applied for by said J. R. Agnew and others, and otherwise to proceed therein according to law, and to make report of his execution of said order at its February term, 1899. That said Leitch, county surveyor and road commissioner, under said order of January 3, 1899, made report in writing to said county court at its February term, 1899, and in making such report reported a conformity therewith, whereas, in point of fact he did not conform therewith, in his view, survey and marking-out of said road applied for by said J. R. Agnew and others, but erroneously and unlawfully disobeyed the same, and deviated therefrom in the following particular, to-wit: Instead of viewing, surveying and marking out said road along the center line named in said application by J. R. Agnew and others and mentioned in said order, between the

southwest corner of said section 9 and the beginning
thereof on the east line of said section 10, he deviated
from said center line along that distance, and erron-
eously and unlawfully viewed, surveyed and marked out
such road along an erroneous and unlawful center line,
thus described, to-wit:    Beginning at the southwest cor-
ner of said section 9, thence running east, bearing south,
to a point thirty-five links south from the southeast cor-
ner of said section 9, thence east, bearing north, to a
point on the south line of said section 10, which is
thirteen feet west from the quarter section corner on
the south side of said section 10; thence south one and
eighty-two-hundredths chains to a point; thence east,
bearing south—along a line which if prolonged to the
east line of section 15, in said township and range, will
intersect such east line seventy-five links from the south-
east corner of said section 10—two and sixty-one-hun-
dredths chains to a point; thence north one and eighty-
two-hundredths chains; thence east seventeen and
sixty-seven-hundredths chains; thence north thirty
minutes west, twenty and sixty-hundredths chains, and
thence east twenty and twenty-eighth-hundredths chains
to a point on the east line of said section 10, which is
seventy-five links south from the point of beginning
named in said application and order.

"That because of the fact that said Leitch, as sur-
veyor and road commissioner as aforesaid, reported a
conformity with said order in viewing, surveying and
marking out said road, whereas, in point of fact, he
disobeyed said order and erroneously deviated from
the center line named in it in the particular above de-
scribed, the said disobedience and deviation lay con-
cealed under the form of said report, nor did plaintiff
know the truth of the matter of said error, disobedience
and deviation until many months after the filing of said
report, to-wit, not until late in the summer of 1899.

"That among other matters reported by said Leitch,
in his said report, was the fact that this plaintiff re-

fused to relinquish the right of way over his said lands for the said road applied for by said J. R. Agnew and others.

"That said report of said Leitch was by said county court (after the filing thereof) by its order of record, made and dated February 8, 1899 (including therein said disobedience, error and deviation), unwittingly approved, and ordered to be recorded, and now remains among the records of said county court.

"That afterwards on said 8th day of February, 1899, said county court, by its order of record, made and dated said 8th day of February, 1899, unwittingly appointed three disinterested freeholders of said Clay county to act as a board of commissioners to view the premises, hear complaints, and assess damages in case of citizens who claimed damages on account of the establishment and opening of said road, so, as aforesaid, applied for by J. R. Agnew and others, and directing them to perform said functions, ordered them to make report to the May term of said county court, 1899. That the order of the appointment of said commissioners was, in words, in conformity with the route and center line of said road as applied for by said Agnew and others; but that said commissioners in proceeding under said order were misled by said erroneous and illegal view, survey and marking-out of said Leitch, and, therefore, proceeded to assess damages—and did assess the same—where claimed by landowners, on account of the establishment and opening of said road, between said southwest corner of said section 9 and the eastern terminus of such road, along the route and center line of said erroneous survey, view, and marking-out of said Leitch, including said deviation, and not along the route and center line between said points named in said application and directed in said order.

"That said commissioners made report of their proceedings under said order to the May term of said county court, 1899, showing therein that they assessed

damages in the sum of one dollar to the plaintiff herein on account of the establishment and opening of said road over his said land; but such report, in words, conforming to said order as to route and center line between said points of fact included said error and deviation, but under the verbiage of said report the said error and deviation were concealed from said county court, this plaintiff, and all others. That said county court, by its order of record, made during said May term, 1899, to-wit, on the first day of May, 1899, unwittingly approved said report of said commissioners, including said error and deviation; and thereafter, to-wit, about July 3, 1899, caused said one dollar assessed to plaintiff as damages, to be tendered to plaintiff, which he then and there refused to accept, and which he ever since has refused—and now refuses—to accept.

"That said county court during its August term, 1899, to-wit, on the 8th day of August, 1899, by its order of record of that date, ordered Daniel J. Mathews, road overseer of said Road District No. 9 in said township and range, in accordance with law, to open said road—as widened and established—forty feet in width—in words, along the route and center line indicated in said application and said orders of said county court hereinbefore mentioned, but, in point of fact, unwittingly, between said southwest corner of said section 9 and the eastern terminus of said road, because of said error and deviation of said Leitch, along the erroneous center line indicated in said erroneous and illegal view, survey and marking-out of said Leitch, including said deviation; and said order of August 8, 1899, directed said road overseer to make report of his proceedings under said order at the next term of said county court, to which term the said matter was continued. That said road overseer, under said order of August 8, 1899, made report to said county court on October 2, 1899, during the session of said court, of his proceedings under said

order of August 8, 1899, and therein reported that he had, since August 8, 1899, opened, properly cleared, and put in a condition for travel the whole of said road applied for by said Agnew and others, which report—although not true in fact as to the amount of work done by said road overseer—was by said county court, by its order of record, made and dated October 2, 1899, unwittingly approved and ordered to be recorded, and the same is recorded among the records of said county court. That said road overseer, in so far as he executed said order of August 8, 1899, between said southwest corner of section 9, and the eastern terminus of said road, followed the route and center line indicated in said erroneous and unlawful survey, view, and marking-out of said Leitch between said points, and made the same deviations.

"And plaintiff further alleges as follows:

"That on said 7th day of November, 1898, one R. M. Massey and more than eleven other freeholders of said Kearney and Liberty townships in said Clay county, filed their application in said county court, after notice thereof given in accordance with law, for the establishment of a new road and the widening of an old road, forty feet in width, between the termini and along the center line thus described, to-wit: Beginning at the northwest corner of the southwest quarter of the southeast quarter of section 10 in township 52 of range 31, in Clay county; thence running south seventeen and four-hundredths chains; thence south forty-five degrees west eighteen feet; thence south two and eighty-hundredths chains to a point thirteen feet west from the quarter section corner in the south line of said section 10; thence west thirty-nine and eight-hundredths chains to the southwest corner of said section 10; and thence west fifty-nine and seventy-hundredths chains to the southwest corner of the southeast quarter of the southwest quarter of said section 9, in said township and range.

"That the center line of said road applied for by R. M. Massey and others is identical with the center line of said road applied for by said Agnew and others from said point thirteen feet west from the quarter section corner in the south line of said section 10, thence west to said southwest corner of the southeast quarter of the southwest quarter of said section 9.

"That in the matter of the application of said road by R. M. Massey and others, the same procedure as to orders on said Leitch, as county surveyor and road commissioner, for commissioners to assess damages, for the road overseer to open the road, with the same character of reports, and the same orders of confirmation were contemporaneously made as in the said road applied for by Agnew and others—to the extent of the identity of the center lines of the two roads applied for.

"That the commissioners in said road applied for by R. M. Massey and others, also assessed plaintiff's damages in the sum of one dollar on account of the establishment and opening of said road applied for by R. M. Massey and others, which sum of one dollar was duly tendered to this plaintiff on or about July 3, 1899, and which plaintiff then refused, ever since has refused and now refuses to accept.

"That the several orders and reports made in said road applied for by R. M. Massey and others as to route and center lines therein between said point thirteen feet west from the quarter section corner on the south line of said section 10 and said southwest corner of the southeast quarter of the southwest quarter of said section 9, were in conformity in words with the application therefor of said R. M. Massey, but said Leitch in viewing, surveying and marking out said road applied for by Massey and others, erroneously and unlawfully abandoned said order directing the survey, view and marking-out, and instead of following the route and center line directed in said order, followed the same erroneous and unlawful center line and route—

between said points wherein there is identity—which he followed in said road applied for by Agnew and others and made the same deviation from the order directing him to view, survey and mark out. But, because he reported a conformity with said order whereas in fact he disobeyed the same and varied from the center line indicated in that order, his error was concealed in his report and said county court unwittingly approved the same, and under the verbiage of the reports and orders aforesaid the said error and deviation escaped the attention of said county court and all others till long after. That because of such concealment the plaintiff did not discover the truth of the matter until late in the summer of 1899, when he had careful survey made of all the lines and corners in controversy.

"That by reason of said errors, mistakes and devia - tions in the views, surveys, and markings-out of said roads, the same have been unlawfully located on his lands, and instead of taking and occupying for, public use a strip twenty feet in width off the north end of his said lands, they everywhere will take—if said roads be not held unlawful—over twenty feet, and in a portion of the way across his said lands over forty feet. That by means of the premises and through the said errors and deviations plaintiff's lands and possession thereof have been unlawfully trespassed on and invaded by defendants, and he damaged in the sum of $500.

"That said road overseers at the time of the institution of this suit and the service of summons herein on them had a joint jurisdiction extending over a line of road thus described, to-wit: Beginning at the southwest corner of said section 9, and thence running east to the quarter section corner on the south side of said section 9. That at said time and said service said Daniel J. Mathews had jurisdiction over such road over a line thus described, to-wit: Beginning at the point of the beginning of said road applied for by Agnew and others and thence westward along the center line of

the said road applied for by said Agnew and others to the quarter section corner on the south side of said section 9; and that at said time and service said Joseph Carroll had jurisdiction over such road over a line thus described, to-wit: Beginning at the southwest corner of said section 9, and thence running southerly along the center line of said road applied for by Agnew and others to the southern terminus thereof.

"That after the discovery by plaintiff of the said error, mistake, and deviation in the views, surveys and markings-out, to-wit, on December 5, 1899, and again on the 2d day of January, 1900, he appeared before said county court—when the same was in session—and asked the judges thereof by proper orders and otherwise to remedy said errors and deviations, but the said court and judges refused to do so. That said defendants say and threaten that they will enforce the said unlawful orders for the opening of said roads and will invade plaintiff's premises, and will in the opening and repairing of said roads dig up and excavate and plough his said lands, and said officers threaten and say they will obey and execute the said orders and will invade plaintiff's premises, to his damage and injury and in contempt of the law and plaintiff's rights. Wherefore plaintiff alleges that he has no remedy at law but only through the equitable jurisdiction of said circuit court and the conscience of the judge thereof. Wherefore plaintiff prays the order, judgment, decree and relief of said circuit court as follows:

"1. That said views, surveys and markings-out of said road, made by said Leitch, be held erroneous, and made in mistake and disobedience of the orders of said county court, directing views, surveys and markings-out of said roads, and be held null and void; that all orders of said court, made in the application for said roads, after November 7, 1898, and all reports filed in said matters after said date, be held null and void, and be set aside.

"2.    That in aid of his main action herein, he have a temporary injunction restraining defendants and all others from executing said unlawful orders and from invading and trespassing on plaintiff's said lands, which he prays to be made perpetual on final hearing of this cause.

"3.    That his damages herein be assessed and he be awarded execution therefor against such parties defendants as by law he may appear entitled to.

"4.    That he recover of defendants all his costs herein.

"5.    That plaintiff have such other, further or different judgment, decree and relief as he shall appear entitled to in equity and good conscience."

The demurrer of Clay county is as follows, omitting caption:

"1.    Because the petition does not state facts sufficient to constitute a cause of action against the said defendant Clay county.

"2.    Because on the face of the petition plaintiff is not entitled to recover.

"3.    Because the petition on its face shows that plaintiff has no cause of action against the defendant.

"4.    Because there is no law authorizing the rendition of a judgment against said county in a case of this kind, and hence in this case, the circuit court has no jurisdiction of this defendant, nor authority to try this cause.

"5.    Because this defendant is not a necessary party to the determination of this action, if plaintiff has any cause of action."

The other defendants, other than Clay county, also filed a demurrer, in the following words:

"1.    Because said petition does not state facts sufficient to constitute a cause of action.

"2.    Because there is a misjoinder of parties defendant.

"3. Because on the face of the petition plaintiff has no right to recover, and has no cause of action.

"4. Because there is joined in this cause parties defendant who are not necessary to a complete determination of the same, if any right of action exists."

Upon a hearing the circuit court sustained the demurrers, and plaintiff declining to plead further, final judgment was rendered dismissing the bill, and plaintiff appeals.

I.  The propriety or impropriety of sustaining the demurrers and dismissing plaintiff's bill, is the sole question for our consideration. We understand from the petition (and of course we have nothing else before us) that for some forty-three years prior to the proceedings in the county court of Clay county, which plaintiff seeks to set aside by this suit, there had existed in said county an old county road about twenty feet wide, which ran from the northeast corner of the southeast quarter of the southeast quarter of section 10, township 52, range 31, west, a distance of half mile to the north and south center line of said section 10, and thence south on said center line of said section 10 to the quarter section corner on the south of said section 10, veering about ten feet to the west at this last point to avoid striking the line of a cemetery located there, and from this point it ran west on the line between sections 10 and 15 and sections 9 and 10 to the southwest corner of section 9, and thence west. From both sides we understand plaintiff owns the west half of the northwest quarter of section 15, and the east half of the northeast quarter of section 16, township 52, range 31. We gather also from the petition that the center line of the new road established in 1899 was the section line between sections 10 and 15, and 9 and 16; that while this center line was in the old road, this center section line did not at all points coincide with the center line of this old road running east and west.

This old road was deemed insufficient, and accord-

ingly on the 7th day of November, 1898, the county court was petitioned to widen this old road to forty feet and in doing so to make the center section line the center line of the proposed forty-foot road. In so doing all the old road would be utilized, and enough more on the north and south of it appropriated to make it forty feet wide.

It appears, moreover, that owing to a desire to make certain changes east of the center of said section 10, two petitions were filed on the same day, but both of them asked to widen the old road west from a point thirteen feet west of the quarter section corner on south line of section 10, in precisely the same way. One application was made by J. R. Agnew et al., and the other by R. M. Massey et al. The opening of the road west from thirteen feet west of the center line on the south of section 10 is the only portion of which plaintiff complains. These two petitions were duly filed, notices given according to law, and surveys made, and commissioners appointed, damages assessed and paid or tendered, and judgments establishing the desired changes were duly entered.

No defect whatever is pointed out in any of these proceedings, and they must be assumed to have been correct in these respects. After a careful reading of the petition and brief of counsel for plaintiff, we conclude that he desires to set aside these two judgments of the county court and the proceedings of the officers acting under its direction, for the reason that he insists that as a matter of fact the county surveyor made a mistake in locating these new lines of the new road. To use the language of his counsel, "It is the *departure* in the actual location by the county surveyor of which plaintiff complains." He says further: "The county surveyor, in the actual location of the road applied for by Agnew et al. between the southwest corner of section 9, departed from the petition or application and order and made the *actual location* along the following

line, to-wit: Beginning at the southwest corner of section 9, thence east bearing south, to a point thirty-five links (twenty-three and five-hundredths · feet) south from the southeast corner of said section 9, thence east bearing north to a point thirteen feet west of the quarter section corner on the south line of said section 10,'' etc.

Counsel then proceeds to say that at the southeast corner of section 9 the center line of actual location is twenty-three and five-hundredths feet distant from the corner. The same errors he insists were made by the surveyor in locating the road asked for by Massey et al., so that as counsel contends the road dips from the north on his lands forty-three and five-hundredths feet, whereas if it had been located as called for by the petition and orders of the court no additional land· beyond that already occupied by the old road would have been required of plaintiff. Thus it will be seen that this controversy is narrowed down to the assertion that the petition to and orders of the county court are regular and call for a center line of the new or widened road, which shall coincide with the section line between sections 9 and 16 and sections 10 and 15, and that the report of the surveyor shows he so located the line and the commissioners assessed damages on the assumption that he correctly located the road as directed, whereas in truth and in fact by subsequent surveys plaintiff has ascertained the surveyor did not locate and mark out the road as required by the petition of Agnew et al., and by the orders of the county court, and therefore he invokes the aid of a court of equity to correct these errors committed by the surveyor and the county court, which are concealed beneath apparent conformity to the petitions and orders of the county court, and therefore he prays that said views, surveys and markings-out of said road· be held erroneous and made in mistake and disobedience and that they be held null and void and set aside.

It is insisted by plaintiff that the demurrers admit

the truth of all the facts alleged, and hence admit the several errors and deviations charged in the bill.    The demurrers admit facts that are well pleaded, but in determining the legal effect of the demurrers we must look to the whole petition.

He states that the judgments which he seeks to overturn in this way were rendered by a court that unquestionably had jurisdiction over the subject-matter and in a proceeding of which he was duly notified; that all of its orders were made in strict conformity to the petitions filed before it and to the report of the county surveyors. It is true he alleged that this officer of the court made a mistake in locating the road, but it appears from his petition that this location was made in a proceeding to which he was a party and he is presumed to have been present and to have seen the survey made on his land and the road marked out.    Instead of calling the county court's attention to that fact at the proper time, he permitted the county court to judicially approve this report and to thus determine that as a matter of fact the survey was made in accordance with its orders and in effect that no deviation was made.    In a word, he pleads a judgment of a court of competent jurisdiction in a matter of which it had jurisdiction and to which he was a party, and in the next breath says the facts which it judicially found and determined in fact did not exist.    How are we to reconcile these two allegations?  Which is admitted?  If, as he alleges, a proper petition was filed, due notice given, the petition heard, the surveyor ordered to view and mark out the road and report, and the surveyor did locate the road and reported that he had obeyed the orders of the court, and the plaintiff stood by and made no objection, and the court found the surveyor had properly obeyed its orders, that judgment is a finality as to all parties to that proceeding in the absence of fraud practiced upon the court in procuring the judgment to be entered as it was.

Having alleged all these facts, must the allegation of plaintiff be accepted as true so as to overturn all the averments which conclusively estop him from saying the surveyor's location was not as he reported it? There is no allegation of any fraud practiced on the court in the procurement of the judgments. At most it is the assertion of a surveyor against the judgment of a court whose duty it was to require a lawful survey to be made of the section line, which it had determined should be the center line of the widened road.

It can not be maintained that a demurrer admits a fact which the plaintiff's petition contradicts.

While the plaintiff in his petition does not say, in so many words, that his statement that the surveyor did not locate the road as directed by the orders of the county court was *not* true, he does make that allegation after having pleaded the solemn judgment of a court which had jurisdiction to establish and open that road and he was in law and in fact a party to that proceeding, and as the law devolved on that court the right and duty of determining the correctness of that survey and the truth of the report of its commissioner, its finding and judgment approving the same are just as binding and conclusive within the sphere of its jurisdiction as that of a court of general jurisdiction, and it must be ruled that when plaintiff pleaded that judgment he was conclusively estopped from alleging the survey was twenty-three and five one-hundredths feet south of said center line instead of being on the true line, unless he had first charged that a fraud was perpetrated on that court in procuring said judgment.

This, it will be observed, is not done.

Plaintiff having been duly notified of the filing of the petition was bound like every other litigant to take notice of the various steps leading up to the appropriation of his land for the widening of the road. If he was satisfied there was error in the location of the road or

Vol 176 mo—33

a deviation from the line designated by the court, it was his duty to call that fact to the attention of the court by timely action, and if it overruled his contention he was entitled to appeal, but it appears he took no appeal and permitted the judgment to become final.

To permit him to do this and now to say that the whole public highway thus solemnly established is based upon an error which could have been corrected by the court if its attention had been called to it but which he negligently failed to do, would controvert the whole theory of the conclusiveness of judgments upon the parties and privies thereto.

The establishment of the center line of the road coincident with the section line was one of the essential things which the county court was asked to do. It ordered this to be done; its surveyor reported he had so located the road, and it was his duty to find the true line and locate the road with reference to it; the court approved his survey; and the road was established accordingly. So far at least as plaintiff is concerned that location must stand until that judgment is overturned by alleging and proving that it was fraudulently procured, or the road is changed by a proper petition and proceeding in that court. But it is apparent that this suit can not be maintained because it seeks to set aside judgments which the plaintiff confesses were correct and just in themselves. He complains only of an incident, a mistake of which he concedes the court knew nothing, but which he should have brought to the attention of the court. [Mitchell v. Railroad, 138 Mo. 330-331.]    If plaintiff had been sued on a forged note and he had been duly summoned and knowing the note was forged he had neglected to plead *non est factum,* can it be doubted that the judgment would have been conclusive that he did sign and execute it and can there be any doubt that a court of equity would not relieve him upon a mere statement that in fact he did not sign it?    Every fact which

was required to be established in the establishment of the road was concluded by the judgment, and the ascertainment of the line on which the road was to be located was one of these facts.

Plaintiff could have appealed from the judgment of the county court. [Sec. 9419, R. S. 1899.] Having had an opportunity to appeal and not having availed himself of it, plaintiff is in no position to ask relief from a court of equity. The demurrers were properly sustained on the grounds that the petition on its face disclosed judgments which were conclusive on plaintiff as a party thereto and that he had his remedy by appeal, of which he neglected to avail himself. The demurrers were also well taken because Clay county was no proper party to the suit. The county had no control over the court and was not a party to the original proceedings.

The county court in exercising its jurisdiction in opening and establishing public roads acts under the general laws of the State and not as an agent of the county. [Reardon v. St. Louis County, 36 Mo. 555.]

It is quite obvious, also, that the bill improperly joined a suit to set aside two judgments affecting different parts of the road with a suit at law for damages against the two road overseers. In our judgment the circuit court properly sustained the demurrers and rendered judgment for defendants and its judgment is affirmed. All concur.